Richard R. Baker, for the Use of Myrtle Ann Baker, et al., Individually, Plaintiffs-Appellees, v. Francis Sauber, d/b/a Fritz's Corner Tap, Defendant-Appellee.

Richard R. Baker, for the Use of Myrtle Ann Baker, et al., Individually, Plaintiffs-Appellees, v. Gus G. Petros and Peter G. Petros, d/b/a Twin's Tavern, Defendants-Appellants.

Gen. No. 65–7.

Second District.

August 13, 1965.

Rehearing denied September 14, 1965.

Robert C. Jenkins, of Sycamore, for appellants.

Moran, Klockau and McCarthy, Schubert & Lousberg, of Rock Island (Bernard J. Moran and Robert L. Ellison, of counsel), for defendant-appellee. Wayne Wilson, of Sycamore, for plaintiffs-appellees.

ATTEN, J.

This is a dramshop action brought under Chapter 43, Section 135, of Illinois Revised Statutes. The Plaintiff, Richard Baker, brought the suit against two dramshops to recover damages for loss of means of support to his wife and three minor children. From a judgment entered on the verdict against both dramshops in the sum of $20,000, and the order denying defendants post-trial motions, this appeal is prosecuted by one of the dramshops.

On September 13, 1963, plaintiff, Richard Baker, age 31, was a resident of DeKalb, Illinois and was employed as a truck driver for the Johnson Ready-Mix Company of said city where his average yearly earnings were between six and seven thousand dollars. He was living with, and supporting out of his earnings, his wife and three minor children. September 13, 1963 was a Friday and plaintiff received his pay check, left work at 4:00 p. m. and proceeded to Fritz's Tap at 5th and Lincoln Highway in the city of DeKalb, to cash his check. Plaintiff entered Fritz's Tap between 4:15 and 4:30 o'clock p. m. where he met a coemployee,

Raymond Slinkard. Messrs. Baker and Slinkard each proceeded to consume four to seven bottles of beer followed by four to six martinis over a period of two or three hours, whereupon they left Fritz's Tap and went to the Twin's Tavern, approximately a block and one-half away, in plaintiff's pickup truck which he drove. They left Fritz's Tap between 6:30 and 7:00 p. m. Upon entering the Twin's Tap, they walked up to the bar and each ordered a seven-ounce bottle of beer which was served them. Their main purpose in going to the Twin's Tavern was to see Ray Slinkard's brother. Within a half-hour after arriving, they left the Twin's Tavern and plaintiff drove his pickup truck to a gas station a block and one-half away, bought a dollar's worth of gas and drove west on Lincoln Highway where he collided with another vehicle at about 8:00 p. m. or shortly thereafter.

As a result of the collision, plaintiff sustained permanent injury to his spinal cord, partially paralyzing him from the waist down so that he is not expected to walk again without assistance. He has been unemployed since the accident.

While at Fritz's Tap, plaintiff testified he drank six to seven large bottles of beer followed by four to six martinis. Raymond Slinkard testified he and Richard Baker had five bottles of beer followed by four or five martinis at Fritz's Tap. He thought they had the smaller bottles of beer. Francis Sauber, the proprietor of Fritz's Tap, testified that each man had four seven-ounce bottles of beer and four martinis at his tavern.

At the Twin's Tavern, and on direct examination, plaintiff testified he drank over three-fourths of the seven-ounce bottle of beer served him there. On cross-examination, he testified that he could have made a different statement as to how much he had, on some other occasion, and that when his deposition was

previously taken, he testified he had a swig or two of that beer. Still later, on cross-examination, he testified he had two or three swigs out of that bottle.

Raymond Slinkard testified on direct examination that while at the Twin's Tavern:

"Q. Did you see Baker drink any of his beer?
"A. Well, I'm not positive, but we poured—we was poured a drink and poured it out in a glass and had a drink together.
"Q. Do you know whether or not Baker drank all of the bottle of beer that was served to him?
"A. No, I'm not positive, but I drank all of mine."

On cross-examination, Mr. Slinkard testified that he gave an investigator a statement on July 17, 1964, and after having read it, testified: "A. Well, I said I could not say if he drank any of it or not there," and admitted it was possible he could have made that statement. When asked as to the truth of that statement at the time he made it, he said, "I don't know."

Gus G. Petros, one of the proprietors of the Twin's Tavern, testified that he removed Mr. Baker's beer from the bar before he had consumed any of it. Joseph DeBair, the bartender in the Twin's Tavern, who served the two bottles of beer to Messrs. Baker and Slinkard, testified no glasses were served with the beers, and that one or both of the bottles was removed from the bar by Gus Petros without any beer having been consumed from either of them. On cross-examination, Mr. DeBair testified that plaintiff did not drink any beer in the Twin's Tavern on September 13, 1963.

Defendants in their appeal, allege the plaintiff failed to establish a case against them as a matter of law and that the trial court erred in failing to direct a verdict in their favor at the close of all the evidence. It is Defendants contention, the evidence failed to show plaintiff's intoxication was due in whole or in part to

beer consumed in their tavern, and that the amount consumed by plaintiff could not as a matter of law produce intoxication.

■ ■ There is a conflict in the evidence whether Baker drank any of the beer served him at the Twin's Tavern. The testimony varies from nothing to three-fourths of a seven-ounce bottle being consumed. Appellants argue that in view of the fact he was intoxicated when he entered the Twin's that if he did consume any of his beer there the amount was so slight it could not as a matter of law, contribute to his intoxication. In order for plaintiff to recover it is only necessary to prove defendant sold or gave intoxicating liquor to him which contributed in some degree no matter how slight to his intoxication. (Cook v. Kirgan, 332 Ill App 294, 75 NE2d 120; Osborn v. Leuffgren, 381 Ill 295, 45 NE2d 622.) It was for the jury to say whether such intoxication was caused in whole or in part by beer served him by defendants appellants. (Brown v. Butler, 66 Ill App 86.)

■ Defendants further urge the evidence was insufficient to justify the conclusion by the jury that the intoxication of the Plaintiff, Baker was caused "in whole or in part" by beer sold to him at the Twin's Tavern. They contend the testimony of Messrs. Petros and DeBair was credible while that of Messrs. Baker and Slinkard was not; and that therefore the verdict is against the manifest weight of the evidence and that Baker and Slinkard had virtually been impeached. Here again the jury had the right to decide which of the witnesses was most credible. It was its province to consider the testimony, the extent to which the plaintiff and his witness had been discredited and the extent to which they or the defendants witnesses should be believed. (Navarro v. Lerman, 48 Ill App2d 27, 198 NE2d 159.)

71

Defendants, also, urge that the testimony in this case does not prove the material allegations of plaintiff's complaint so as to make out a case within the meaning of the Dram Shop Act. Without belaboring the point, we consider the evidence in this case was sufficient to support the jury's verdict. (Cook v. Kirgen and Osborn v. Leuffgren, supra.)

Defendants further urge prejudicial error was committed against the Twin's Tavern during the trial by plaintiff's attorney during the trial and by both plaintiff's and defendant's attorneys during final arguments. During the trial plaintiff's counsel asked the defendant, Gus G. Petros, a question about his prior involvement in Dram Shop Litigation. This question was promptly objected to; the court sustained the objection and instructed the jury to disregard it and counsel for plaintiff was duly admonished by the court. We do not consider this reversible error.

At another point in the trial during the cross examination of plaintiff's witness, Raymond Slinkard, when a foundation was being laid to impeach this witness, appellant alleges plaintiff's counsel persisted in endeavoring to read the statement appellants' counsel had in his hand over counsel's shoulder after a ruling by the court that he was not then entitled to see it. This alleged action by plaintiff's counsel is not in the record nor are the alleged prejudicial closing arguments recorded. Therefore these matters cannot now be considered on appeal. (Iczek v. Iczek, 42 Ill App2d 241, 191 NE2d 648.)

Defendants further allege error in the giving of instruction No. 9, which is IPI instruction No. 5.01. We have considered the effect of this instruction in this case and cannot agree it prejudiced defendant.

The judgment of the trial court is sustained.

Judgment affirmed.

ABRAHAMSON, P. J. and DAVIS, J., concur.